IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ALLEN JACKSON, #178827,<br><br>               Plaintiff,<br>   vs.<br><br>MAYOR DEN;<br>L.T. JUNE;<br>LEE MAILROOM WORKERS JOHN DOE;<br>A/W BELL;<br>WARDEN PADULA; AND<br>LEE GRIEVANCE OFFICE WORKER<br>JOHN DOE,<br><br>               Defendants. | ) Civil Action No. 3:08-3578-HMH-JRM<br>)<br>)<br>)<br>)<br>) **REPORT AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff, Allen Jackson, filed this action under 42 U.S.C. § 1983 on October 23, 2008.[1] On July 16, 2009, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on July 17, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff did not respond to the Roseboro order and the undersigned, on September 4, 2009, issued an order allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this action. On September 21, the undersigned granted Plaintiff's request for additional time, and the deadline for him to respond to Defendants' motion for summary judgment was extended until October 19, 2009. Plaintiff filed an affidavit opposing Defendants' motion for summary judgment on October 21, 2009.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(e), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

**DISCUSSION**

Plaintiff alleges that he was denied access to the courts because some of his correspondence was not timely mailed on January 16, 2008. Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff failed to state a valid cause of action that his right of access to the court was denied; (3) none of Plaintiff's complaints concerning his access to the courts or the handling of his legal mail rise to the level of a constitutional deprivation; (4) to the extent Plaintiff alleges a claim for monetary damages, Defendants are entitled to qualified immunity; (5) the doctrine of respondeat superior is not applicable in a case brought under § 1983; (6) Defendants are entitled to Eleventh Amendment immunity; and (7) any perceived state claims should be dismissed as all federal claims have been demonstrated to be without merit.[2]

### 1. **Exhaustion of Administrative Remedies**

Defendants contend that Plaintiff's complaint should be dismissed because he failed to exhaust his available administrative remedies as he did not file his SCDC grievance within fifteen days of the alleged incident and did not appeal the denial of his grievance to the Administrative Law Court ("ALC").[3] In his complaint, Plaintiff wrote that he filed a grievance on September 11, 2008

---

[2]To the extent that Plaintiff is attempting to assert any state law claims, it is recommended that they be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

[3]Defendants contend that Plaintiff has not exhausted all of his administrative remedies because he has not shown that he submitted the matter to the ALC for consideration and pursued a further appeal of any unfavorable ALC ruling according to the law. The fact that the South Carolina Legislature made a court available to prisoners who wanted to appeal a final decision by a jail facility denying a grievance does not alter the federal PLRA by extending its administrative exhaustion requirements to include exhaustion in all state judicial forums. In § 1983 matters, Congress only intended that "administrative remedies" be satisfied. See e.g., Pozo v. McCaughtry, 286 F.3d 1022,
(continued...)

(Number 2817-08) concerning the matters alleged in his complaint, and received a final agency determination on September 16, 2008. Complaint at 2. In his affidavit in opposition to summary judgment, however, he has not addressed Defendants' argument that he failed to exhaust his administrative remedies.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The Fourth Circuit, in Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

Plaintiff fails to show that he has exhausted his administrative remedies as to the issues raised in his complaint. Mary Coleman, who is in charge of inmate grievances for the SCDC, states that

---

[3](...continued)
1024 (7th Cir. 2002)(exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court), cert. denied, 437 U.S. 949 (2002); Brown v. Evans Corr. Inst. Med. Staff, 2007 WL 1290359, at *4 (D.S.C. April 30, 2007).

Plaintiff did not comply with SCDC Policy GA-01.12,[4] Inmate Grievance System, Section 13.1, which requires an inmate to file a grievance within fifteen days of the alleged incident. The alleged incident took place on January 16, 2008. Plaintiff did not file his grievance until September 11, 2008, and his Step 1 grievance was returned unprocessed to him because it was untimely filed (see Grievance Number 2817-08 - attached to Complaint and to Defendants' Motion for Summary Judgment). Thus, Plaintiff did not exhaust his SCDC administrative remedies because he did not file his grievance within fifteen days of the alleged incident. See SCDC Policy GA-01.12 and Beatty v. West, No. 06-2835, 2007 WL 1485860, at *2 (D.S.C. May 17, 2007). Further, there is no indication that Plaintiff filed a Step 2 grievance.

### 2. Access to the Courts

Plaintiff alleges that Defendants denied him access to the courts by failing to mail certain documents on January 16, 2008. Defendants deny any wrongdoing and contend that Plaintiff has not made any allegations concerning Defendants in the body of his complaint. They argue that Plaintiff fails to establish a claim because any delay in mailing was due to Plaintiff's own failure to properly

---

[4]The Court may take judicial notice of SCDC Policy GA-01.12. As noted in Jones v. Kay, No. 07-3480, 2007 WL 4292416 (D.S.C. December 05, 2007), the procedures and time limits of this policy are summarized as follows:

> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident; (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system; (3) the Warden should respond to the grievant in writing within forty (40) days; (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 grievance plus five (5) days for the grievant to be served.

The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. See SCDC Policy GA-01.12 (Inmate Grievance System)(Attachment to Coleman Aff.).

4

provide postage or a debit form. Defendants also argue that Plaintiff fails to show that he was prejudiced in any way.

In <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the <u>right</u> <u>of</u> <u>access</u> <u>to</u> <u>the</u> <u>courts</u> not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1316 (4th Cir. 1996); <u>see</u> <u>also</u> <u>White v. White</u>, 886 F.2d 721, 723-24 (4th Cir. 1989); <u>Strickler v. Waters</u>, 989 F.2d 1375, 1382-85 (4th Cir. 1993), <u>cert.</u> <u>denied</u>, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. <u>Lewis</u>, 518 U.S. at 353-54.

The mail in question involved a case Plaintiff had pending in the South Carolina courts (Case Number 2003-CP-40-5998). On January 8, 2008, that case was dismissed because Plaintiff failed to serve the Record on Appeal on opposing counsel and file an original Certificate of Service as provided by Rule 210 of the South Carolina Appellate Court Rules.[5] In order to appeal the dismissal

---

[5]The case was previously dismissed by the South Carolina Court of Appeals on August 26, 2005 because Plaintiff failed to provide correspondence regarding the transcript and/or serve and file Appellant's Initial Brief and Designation of Matter. On September 28, 2005, the South Carolina Court of Appeals granted Plaintiff's motion to reinstate his case against the State of South Carolina.
(continued...)

and argue against the remittitur of the case, Plaintiff should have filed a Petition for Reinstatement, according to Rule 221(b) of the South Carolina Appellate Court Rules, within fifteen days or by January 23, 2008. See Order of Dismissal dated January 8, 2008 (attachment to Complaint).

Plaintiff attempted to mail legal letters to the South Carolina Court of Appeals and the South Carolina Attorney General's Office on January 16, 2008. On January 18, 2008, the letters were returned to him from the LCI Mail Room as undeliverable due to a lack of sufficient postage. The letters were remailed, but Plaintiff's motion for a rehearing was returned to him because it did not arrive at the South Carolina Court of Appeals until January 25, 2008, and thus was deemed untimely. See Complaint at 3-4.

Plaintiff fails to show that Defendants violated his constitutional right of access to the courts. He has not alleged that any of the identified Defendants were responsible for his documents not being mailed on January 16, 2008, and he admits that Defendants did not prevent him from later mailing these documents.

Major James Dean of LCI states that LCI was placed on lockdown status from December 27, 2007 until February 2008. As a result of the lockdown, the mailroom instituted certain policies and procedures to facilitate the handling of mail at LCI in a timely and secure manner. Dean Aff., Para. 3. Associate Warden Brooks ("Brooks") and LCI postal center employee Sandra Simon ("Simon")

---

[5](...continued)
Plaintiff was notified that he needed to serve and file Appellant's Initial Brief and Designation of Matter on or before October 28, 2005. On November 13, 2007, the South Carolina Court of Appeals granted Plaintiff's motion to file his initial reply brief out of time. Plaintiff was advised that he had to provide proof of service showing that Appellant's Initial Reply Brief was served on opposing counsel within seven days of the date of the letter, and that the Record on Appeal was due to be served on opposing counsel and a Certificate of Service filed within thirty days of the date of service of Appellant's Initial Reply Brief. See Attachments to Defendants' Motion for Summary Judgment.

state that if mail is not in an "indigent" envelope, does not have proper postage, or is unaccompanied by a Form 10-14 (debit form), the mail will be returned to the inmate due to insufficient postage. See Brooks Aff., Paras. 8-9; Simon Aff., Paras. 5-6. Brooks and Simon state they diligently searched the mail room business records and did not find a record of Plaintiff submitting a Form 10-14 in January 2008. Brooks Aff., Para. 10; Simon Aff., Para. 7. Here Plaintiff does not dispute that he did not place his mail in an indigent envelope. He claims that he submitted a debit form with the legal mail, but has provided nothing to support his argument. Further, he does not dispute that he was later able to mail his letters.

Associate Warden Brooks states that Plaintiff had multiple opportunities for his mail to be sent out once it was returned to him on Friday, January 18, 2008. He states that pursuant to policy at the time, Plaintiff's unit's mail call was specifically set for Fridays and Plaintiff could have corrected or remedied the postage problem then and had the mail placed back in the outgoing pile. Brooks Aff., Para. 11.

In his affidavit in opposition to summary judgment, Plaintiff appears to disagree with the policy set out by Defendants and claims that SCDC Policy PS-10.08 did not require him to first submit the Form 10-14. Allegations that Defendants did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

7

Further, Plaintiff's claim of actual injury as a result of Defendants' actions appears to be speculative. As noted above, Plaintiff's case (2003-CP-40-05998) had already been dismissed twice prior to his request for a rehearing. He had further recourse with which to pursue his case and attempted to do so. On March 19, 2008, the South Carolina Supreme Court denied Plaintiff's Writ of Certiorari. In April of 2008, Plaintiff filed a Motion for Reinstatement of Appeal with the South Carolina Court of Appeals. In his motion, he admitted that his case was dismissed because of his failure to abide by the Appellate Court Rules, but does not mention any mailing problems. See Attachments to Defendants' Motion for Summary Judgment.

### 3. Respondeat Superior

Warden Padula contends that Plaintiff made no allegation of personal involvement on her part and she cannot be held liable on a theory of respondeat superior or vicarious liability under § 1983. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Warden Padula was personally responsible for any of the alleged incidents or acted in any way other than a supervisory role. Further, Plaintiff has not shown that Warden Padula was deliberately indifferent to, or tacitly authorized, any of the actions or inactions

of SCDC employees. Thus, Plaintiff fails to show that Warden Padula is liable on a theory of respondeat superior or supervisory liability.

**4.    Immunity**

Defendants contend that they are entitled to Eleventh Amendment immunity in their official capacities. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## **CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary

judgment (Doc. 40) be **granted**.



Joseph R. McCrorey
United States Magistrate Judge

October 30, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice**.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).